We will hear argument this morning in Case 21-57, Tigniglia v. Strom. Mr. Dvoretsky? Mr. Chief Justice, and may it please the Court, the Fourth Amendment recognizes the sanctity of the home by drawing a firm line at the door. The government cannot cross that line without a warrant unless there is consent or exigent circumstances. Here there was neither. Respondents warrant with seizure of petitioner from his home and their subsequent seizures of his lawfully possessed guns from his bedroom and garage violated the Fourth Amendment. The First Circuit tried to get around the warrant requirement by creating a new exception based on Katie, but Katie involved a standardized search of a car in police custody. It doesn't grant a license for intruding the home. Quite the opposite. Nearly every page of the Court's decision relies on the constitutional differences between cars and houses. Respondents in the United States take a different tack. They claim that the warrant requirement isn't even implicated when officers act for non-investigatory reasons. But in case after case, the Court has consistently applied the warrant requirement to homes, regardless of the government's purpose, including when public health or safety is at stake. Moreover, the line between investigatory and non-investigatory actions is hardly clear. Nearly every criminal violation has public safety implications, so dispensing with the warrant requirement whenever police can point to a health or safety motive would eviscerate the Fourth Amendment. Finally, there's no good reason to create the sweeping new rule that respondents ask for. Where there is a true emergency or where people ask to be helped, existing law already allows an exception to the warrant requirement. Many states also provide a number of ways for the government to address problems while respecting the Fourth Amendment, including red flag laws and involuntary commitment procedures. But absent consent or exigent circumstances, the Fourth Amendment doesn't allow officers to conduct searches or seizures in the home pursuant only to their own discretion. I'd be happy to answer the Court's questions. Mr. Goretsky, let's say the police get a call, it's eight o'clock at night, the person says their, you know, elderly neighbor, they invited her to dinner at six, it's eight o'clock, she's never late for anything, she's not answering the phone, they haven't seen her leave the house, they're worried, they asked the police if they could come over and check it out. The police do that, they go onto the property, they can't see much through the windows, but the back door is open, they go in. She's not there, but she comes back and says, what are you doing here? Sues her, sues them under 1983 for violating her Fourth Amendment, Fourth Amendment rights. Does she win? I think in that situation, you'd have to analyze whether the police had an objective basis for believing that there was an emergency there. Well, go ahead and analyze that. I've given you all the facts. Do they have an objective basis because the neighbors say she hasn't, they haven't seen her all day, she didn't come over for dinner, she's never late, is that enough? No, I think that that alone would not be enough. I think you would need some additional facts to suggest that there was a true emergency and that there was no other alternative for the police but to go in. There are other things that could, that can be done in that situation. You can call another family member, perhaps... Well, I mean, come on, assume they, their family members aren't answering the phone either. You know, the neighbors are saying she's an elderly woman, it's, she never late, she's late, they're not able to reach her by phone, they don't know who else to call. The police are violating the constitution because they walk in the back door to make sure, you know, she's not lying on, lying on the floor. I think absent, absent either consent or some objectively reasonable indication of an emergency, which I don't think those facts establish, the police can't just go into somebody's house without a warrant. That, that is the basic command of the Fourth Amendment. Okay, it's 24 hours later. Can they go in again? I, I think that there is a line drawing question of when it, how many facts you have to add to that hypothetical until it becomes an emergency. I think 24 hours would not be enough. At a certain point, perhaps they could get a warrant for a missing person and go in on that, on that basis, but I think just the fact that somebody for 24 hours might choose not to show up to dinner or choose not to answer the phone. Well, that's not the only, that's not the only facts. There are more facts, which is that she was supposed to come over to dinner, that she's never late, that the neighbors haven't been able to reach her, but none of that matters. She just, you know, maybe she dies. The difference between eight o'clock at night and eight o'clock the next day. I think if, if all you have is 24 hours, that wouldn't be enough. I think if you had, maybe if you had those facts plus a couple more days, perhaps that would be whether the police have an objective basis to think that there is an emergency that requires them to go in. Absolutely. Yeah, all right. Well, does she, does it matter if we're talking about a caretaking, community caretaking, what the community is like? I mean, is it, could it be that somebody like Andy of Mayberry is all right because people expect him to, you know, keep track of things, but, you know, Kojak isn't? Um, I don't think that police would have different license to enter the home without a warrant based, based on those sorts of considerations. No, your honor. Justice Thomas. Uh, thank you, Mr. Chief Justice. Uh, counsel, I am going to return to the, uh, Chief Justice's point. Uh, where in the fourth amendment is a, uh, wellness check precluded? Uh, your honor, I think that the basic command of the fourth amendment is, and this court has recognized it in numerous cases, is that warrantless intrusions of the home are unreasonable absent consent or exigent circumstances. Now, if a wellness check were justified based on exigent circumstances in light of, in light of all of the facts and circumstances presented, uh, then the fourth amendment in that circumstance would allow it. But what does the fourth amendment say? What are the words in the fourth amendment that preclude a wellness check? Not the, not the exceptions, not the jurisprudence, but the words. Uh, the right of the people to be secure in their, in their houses against unreasonable searches and seizures shall not be violated. This court, this court has interpreted the requirement of an unreasonable search and seizure to mean that a search of a home is unreasonable, absent a warrant, unless one of the, you're skipping a step. The mere fact, what if a police officer simply comes on to, uh, your porch to collect for a local charity? And where would that, how's that different from a wellness check? Um, I think that the police officers are allowed to come on to the porch for a wellness check. If all they're doing is knocking on the door to check on you. I think they can't go farther than that though. If they don't have consent to enter the home and go inside of it. Uh, but simply, simply going onto the porch and knocking on the door, whether it's to, to check on, to check on wellness or whether it is to collect for a charity, I don't think that's prohibited by the fourth amendment. I think that the point of the chief's question is if you're, the elderly woman doesn't show up, uh, she could be sick. She could be actually, she could be watching TV. She could be doing any number of things, but the, you know, maybe we agree that you shouldn't, the police officers shouldn't peer through the windows, uh, in search of a contraband or something that looks like a search, but to see if she is okay, how does that become a search? How does looking for someone to determine whether that person is okay? How is that a search or a seizure? I think it's a search or seizure when the police enter the home without consent and, and invade the privacy of the home and violate in that instance, the right of the people to be secure in their homes. Now, again, that he does go in and he finds her, uh, unconscious on the floor. Uh, can she sue him? Um, if he goes in and it turns out that there was an actual emergency. Yes. I mean, well, I mean, he wouldn't know unless he enters the premises. He doesn't have any knowledge of that before he goes in because exactly as the chief said, the neighbors invited her to dinner. She's never late and he finds that she has actually fallen and broken her hip. Justice Thomas, while it's not a hindsight inquiry, I think if those were the facts, uh, I think if he goes in without an objective basis and just happens to have guessed correctly that she did need help, that would not absolve the officer of liability. But, but I do think that if the officer has an objective basis beforehand for going in, that would be emergency, that would be emergency aid. And in that situation, there would be no fourth amendment violation. Thank you. Justice Breyer. I have a factual question and a legal question. My factual question is this, the police, uh, went to the porch and they went inside and they took your client and took him to the hospital, I think. And, uh, um, then they went back and got the guns. How long after, uh, they put him in the ambulance or wherever they put him, how long afterwards did they get the gun? Justice Breyer, Justice Breyer, I don't, I can't tell you exactly how many minutes or seconds it was, but it was all part of the same visit. What? It was the same visit? It was all part of the same visit. All part of the same visit. I mean, it's 30 minutes too long, it's five minutes too short. Do you have any idea? Uh, I think it would be less than five minutes. I think less than five minutes. Okay. Thank you. And a second question is a legal question, which I'm having a hard time with. Sure. I think you could apply exigent circumstances. And I think, wait a minute, there's so many situations where it's obvious the police should enter. You know, baby's been crying for five hours and nobody seems to be around. A rat's come out of the house at a time when rats carry serious disease and have to be stopped. Uh, a person goes into the house that the police think, but they think the political inside the house and don't know that this person has a serious communicable disease, particularly for older people who happen to live in the house. I mean, we all can think of dozens of instances. And if we call those exigent circumstances, we weaken the exigent circumstances. And if we move to a whole new thing like caretaker, I don't know what we do. So what's your answer to my dilemma legally? Say exigent circumstances, but are there special ones or what? How do we do it? Justice Breyer, I think the way this court has understood exigent circumstances is as requiring a true emergency demanding immediate. Too narrow because there are lots of health emergency. What about, you know, the rats, the baby crying, the old people who don't know they're going to be exposed to deadly, uh, uh, uh, viruses, et cetera. We can think of lots of circumstances where it's very reasonable for a policeman to go to the house and you can too. We both can't. So am I just supposed to move the exigent circumstances rules, which grew up in a different context to this context or what? Justice Breyer, just to take a couple of your examples, the baby crying, I think would be a true emergency, but rats that, that was, what was at issue in the Frank case, which this court overruled and try reading the plague, try reading something where a rat coming out of the house could give people bubonic plague. I mean, you know, it's easy to invent hypotheticals or do we just take this case on a common law basis, make no rule and say, this is too much or too little. And camera was a, was a, was a, a long term. It was a different thing. Okay. I'm trying to put my dilemma and I want your answer. Justice Breyer, I think you apply the exigent circumstances doctrine, the way this court has always applied it, which is requiring a true emergency. And if there isn't a true emergency, there may be other alternatives that the police can quickly take advantage of like administrative warrants. That's what the court contemplated in the camera case involving housing code issues. And if it's neither a true emergency, nor something that can be addressed in that sort of manner, then I think the fourth amendment requires that the police not go in that situation. Thank you. Justice Alito. Uh, Mr. Derefsky, I, I think the way in which this case has been presented to us, uh, by both sides is most unhelpful because it conflates several separate issues. Uh, one is whether a warrant is needed under certain circumstances. I know that's what you want to talk about. I don't want to put that aside and talk about a, a, an issue that comes before that. And that is what are the permissible reasons for a search or seizure and the amount of evidence that a government officer has to have to, uh, to conduct the search or seizure. And so what I'd like to do is to try to give you some situations, uh, and ask you to tell us as briefly as you possibly can, whether, uh, a search would be permitted under these by some government officer. Also putting aside the question of whether it's a police officer or somebody else. So the first one is a person in the house may commit suicide where suicide is not a crime. Is that a permissible reason for a search? Uh, for, for a search by an officer without any other authorization, just in the officer's discretion. Without consent. Without consent? No, that's not a permissible reason for a search. Uh, even if the officer has probable cause to believe the person will commit suicide. Um, I think it may depend on the immediacy of the situation in that hypothetical. Putting aside the warrant requirement, a person may commit suicide, a probable cause the person will commit suicide. The reason to enter. That may be a reason to enter. Does the officer need probable cause, reasonable suspicion or something else? Um, I think the officer needs to have an objective basis to believe that the suicide is, is going to be immediate, uh, and that therefore the officer must enter. In order to prevent immediacy goes to the warrant requirement, uh, probable cause, reasonable suspicion or something else. Um, I think they, I think they are related because I think for the warrant requirement, you're asking something similar to a probable cause kind of inquiry, which is, is there a reasonable basis to believe, uh, that is there a reasonable basis to believe that the officer needs to go in? These are, these are all intertwined. All right, let me go on to the second example of a vulnerable person in the house. For example, a person with a disability, an elderly person with dementia, a child may be abused or denied necessary care. Permissible reason, probable cause, reasonable suspicion, something else. Uh, I think you would need probable cause in that situation, but that's a criminal situation. And so you could get a criminal warrant there. You need to be able to get a criminal warrant from the hypothetical. As I understood it, that was a, that would be criminal abuse of an elderly individual in the house. If the police suspect that they need probable cause that that crime is being committed and a judge can, in that instance, authorize a warrant. Well, a child calls the police and says, I live, uh, I live 500 miles away. Um, my mother has mild dementia. The last time I spoke to her, she said something was wrong. She's upset, but it was hard to make sense of it. And now when I call the caretaker always provides excuse me, excuses why she can't, my mother can't speak on the phone. Can police do anything? Absolutely. I think that's a paradigmatic example of having a basis to believe that a crime is being committed that police can investigate that and they could seek a criminal warrant. Do you think that's probable cause I, that sounds to me like probable cause based on a, a, at least, at least to investigate and perhaps to get a warrant based on a tip that a crime is being committed. All right. Thank you. This is Sotomayor council. I'd be hard pressed to think that any judge would not consider the hypothetical press by the chief justice as justifying a, a, a knock and entry by police officers. Um, you have a neighbor who expects an elderly woman to come visit a known tipster who comes and tells the police she's never late. And it's now she's really late and there's no answer. I don't see how under any circumstance, either the emergency aid or, um, uh, emergency doctrine, exigent circumstance doctrine wouldn't permit that search. Um, I I'm, if that's the case, then maybe justice prior is right. But if I disagree with him and believe that both of the emergency aid doctrine and the exigent circumstance doctrines would permit most entries that where there is reasonable cause to believe that someone might be in need, what does that do to your argument? Justice Sotomayor, I don't mean to fight too hard on the hypothetical that the chief justice presented, uh, the emergency aid doctrine, if that could cover that sort of situation, uh, it would also cover lots of other situations that the other side is positing today require a community caretaking exception. The emergency aid doctrine can covers true emergencies. If there is reasonable cause to believe that someone is in need, that doesn't help the respondents in this case, they haven't argued exigent circumstances. In fact, they've affirmatively waived exigent circumstances. I don't disagree with you. And I think that you could always posit an argument in the middle and then officers would have qualified immunity. But my point to you is, um, aren't you trying to break, you're right that the community caretaking exception was created because of some of these hypotheticals, but I think at the core, and I thought that was your argument is that there has to be some sense of eminency, some sense that there's a real problem going on, correct? Absolutely. That's absolutely right. Justice Sotomayor, uh, the, the exigent circumstances doctrine requires a true emergency. It has to require immediate action. And if you had a reasonable cause to believe that someone is in need, let's say the, the circumstances doctrine is satisfied, but that's what I thought of mostly. That's what your brief pointed out that many of the circumstances that have been looked at previously by other courts under the community care community caretaking exception are covered by either the emergency aid or exigent circumstance doctrines. Correct? Yes, that's right. All right. Thank you. Justice Kagan? Mr. Dvoretsky, um, you mentioned a bit ago, the possibility of administrative warrants, and I'd like to explore that a bit. Suppose a locality, suppose you were to win this case and, uh, and the locality said, you know, we want to set up a good scheme of, um, of, of giving permission for the kinds of welfare checks that we've been doing. What would that scheme look like? And how far away would it be from what we think of as the kind of scheme that produces criminal warrants? Justice Kagan, I think it would depend on what the state is trying to accomplish with the welfare check scheme. But the two, the two sorts of schemes that have proliferated in states are red flag laws and involuntary commitment laws. And there are red flag laws in many states that allow warrants where guns, uh, where taking guns from people is necessary because they pose a risk of harm to themselves or others. And those laws... And on what standard do those laws operate? Is it a probable cause standard? Is it something lower? Could it be something lower? It's usually a probable cause standard. And they, the laws typically provide some specific criteria for a court to consider about whether the person poses a risk. Proposal locality said probable causes is too much. We should, we should use a reasonable suspicion standard. Would that be appropriate? As long as it went through a third party, you know, some judge or other state official. I think the fact that it goes through a third party is a key part of that scheme. I think that is, that's a significant factor under the fourth amendment. I think it would be more defensible under the fourth amendment if it required probable cause. I don't know, depending on the details of the scheme, whether some slightly lesser standard would be sufficient, but probable cause by a judge, uh, would I think be the gold standard of such a scheme for fourth amendment purposes. And I guess I'm less interested in the gold standard than in the dividing line between constitutional and not, but, but you, you also said that these red flag laws were about procuring guns in the hands of, of, of, of people who would do harm to themselves or others. Could you, um, do you think constitutionally you could broaden those laws to encompass schemes like the chief justice's hypothetical? I think you could, I think states can provide for a warrant for a welfare check. As long as there is a, an objective basis for believing that there's a person inside in need. And in that situation, it might not have to be a true emergency because it's not a police officer making that judgment in his or her discretion on their own, but rather you have a neutral decision maker. Uh, I'm not aware of states having done that, but, but I think they probably could as long as you had, uh, again, the, an objective basis found by a judge by a neutral decision maker. In the states that have done this, what neutral decision makers are they using? Are they using judges? Are they using other people? What would be constitutionally permissible? They're using judges, uh, required. Um, I think some sort of a neutral decision maker is required, whether a state could have say an administrative law judge or a different, some different kind of decision maker. Uh, I think that might be, that might well be fine. Okay. One last question on a, on a different subject. You said that the, um, respondents here had waived the argument that this was a true emergency, putting the waiver question aside. Why wasn't this a true emergency? Justice Kagan, the only basis that the officers had for thinking that Mr. Cornelia was potentially suicidal was a statement that he made the night before, but 12 hours had passed since that statement. He was in the home with the guns during that time, nothing had happened. And the officer said that when they spoke with Mr. Cornelia, he seems calm and normal and polite. Those circumstances don't make out an emergency that requires immediate action without involving a mental health professional in neutral decision maker and so forth, uh, rather than just the officer's discretion. Thank you. Justice Gorsuch. Uh, good morning, counsel. Pick up where, uh, justice Kagan left off. Do we need to, or should we decide, uh, whether exigent circumstances or community care taking, uh, exception applies to these facts, or do you want us just to resolve the legal question and remand to the first circuit? Um, we're asking you to, we're not asking you to resolve it. We don't think it would be appropriate for you to resolve whether exigent circumstances applies to those facts because of the waiver. As far as community caretaking is concerned, we're asking you to hold as a legal matter that the community caretaking doctrine doesn't justify searches or seizures from the home. And because that is the only basis that the respondents have given for the searches or seizures here, uh, there would be no remand required that that would be a judgment in our favor at that point. Okay. And, and, uh, your, your friends on the other side, solicitor general's office argues that the fourth amendment permits a warrantless seizure or home entry that is reasonably necessary to protect health or safety. That's their test. What's wrong with that? Uh, for starters, Justice Gorsuch, that's contravened by a number of this court's cases, uh, including camera and Clifford and Barlow's and to tell where even though there was a public safety rationale offered for the search, the court nevertheless required an administrative warrant before, uh, government officials could search from the home. So it's, it's contrary to this court's case law. It's also a rule that would swallow all sorts of other fourth amendment doctrines because virtually any criminal situation can also be described in health or safety terms. You wouldn't need the hot pursuit exception, uh, because police could always say that they're just acting to, to, uh, protect the safety of potential occupants in the home. Uh, in light of, in light of having a criminal in their midst, it wouldn't have to be in a hot pursuit situation. Likewise, you wouldn't need a warrant to enter the home in order to arrest somebody because the police could in that circumstance say, well, it would be dangerous for the other occupants of the home to have to have a killer in the home with them for any situation involving drugs and alcohol. Police could just say they were going into the home in order to make sure that the suspect was okay. That would be contrary to this court's decision in Welsh. And so the government's rule here is contrary to lots of this court's precedent and would create an exception that swallows rules that are essential to the fourth amendment. Okay. Accepting that, that that might be the case counsel and that pretty much everything can be described as health or safety, right? I mean, what, what, what does the government do that doesn't involve health or safety? How does it help to have a, an administrative warrant, um, requirement? I mean, I understand the common law require it treated the home as, uh, an asylum and, uh, a castle of defense that was virtually impenetrable absent some sort of immediate concern about physical, uh, injuries, um, as you describe it in your brief, but if the government can just get an administrative warrant to come in to test for illness, to check at the temperature of the house, whether it's too hot, too cold, maybe to install some energy saving devices, because that helps sell for safety. If that's what you're now conceding what's left of the fourth amendment. Within a minute, just as course it's within administrative part requirement, you're involving a neutral decision-maker rather than leaving. I understand that, but the neutral decision-maker is also employed by the government and the different branch, maybe, maybe not. And state governments can organize themselves how they wish. Um, so maybe an executive officer permitting another executive officer on a showing of what you said, reasonable suspicion that the house might be too warm, too cold. Is that really a reasonable search or seizure in light of the fourth amendment's history and original meaning? If you had one executive officer, uh, providing authorization for another, I think that would be problematic. If you had a truly neutral decision-maker like a judge, then having that decision-maker involved prevents arbitrary harassment by officers. It gives the occupant of the home, some notice and some assurance that this is approved. And isn't simply the officer acting on his or her own in a way that goes to the heart of the fourth amendment's concern. Pretty small on the land there. Counsel. Okay. But thank you. My time's expired. Thank you. Justice Kavanaugh. Thank you. Chief justice. Good morning, Mr. Dreschke. Um, I think, uh, the circumstances in which this issue are going to matter or two, two circumstances where it's going to matter, uh, are, uh, older people who fall, uh, and suicide. Um, so I want to focus on those two things. Uh, the chief justice's questions focused on the older people who fall, uh, the statistics on that are quite shocking as I'm sure, you know, they're huge. Uh, and many of us, uh, of course will, when there's a neighbor who you haven't seen, uh, or parents who lives in a different place, uh, will, uh, instead of barging into the house yourself, um, or calling if the parent lives in a different place, calling a neighbor to barge into the house, break into the house, you'll call the local police officer who you might have a relationship with particularly in smaller towns and communities and ask them to check in. When can you do that consistent with the fourth amendment? Um, I think you can always call the police. I know when you can call. When can the police go in? I thought your answer to the chief justice was, uh, somewhat startling. Well, I think the police can go in when they have reasonable cause to believe that there's someone in need. Okay. And let's, let's break that down. You haven't seen the person on a few hours where you always talk to your parent in Florida on Sunday night and they weren't there. So on Monday you call the police, what happens? Um, I think perhaps in that situation, the police, depending on how many facts you give them about this, you know, your parent generally being reliable, not missing calls, not missing appointments, the more facts of that sort that you add to the hypothetical, I think the more likely it is that the police could quite plausibly invoke emergency aid as a basis for going in to make sure that the person is okay. But, but you would need you, the police would need to have that objective basis to think that this is really somebody in need. That's what lets them dispense. Well, it's not going to be perfect information. It's going to be a neighbor who cares about another neighbor and hasn't seen them or parents. And what I'm worried about is obviously the longer you're in the house and no one comes to get you, you're more likely to die. From the fall. And that's, you know, the statistics are huge on older people dying from falls. Justice Kavanaugh, it's never going to be perfect information. And that's why it simply requires an objective basis, not a certainty. And, uh, it's just simply an objective basis in the moment. And I think in the sorts of, let's talk about suicide. You know, you know how many suicides by gunshot there are every day in the United States? Uh, I don't have the statistics. They're about every day, every day on average, every single day on average, there are 65 suicides by gunshot in the United States, uh, on average every day. Uh, okay. And police officers are critical in when a neighbor, when a family member as in this instance can help prevent that. And so why under the facts, maybe Justice Breyer's question, why under the facts here isn't preventing suicide when a spouse says, uh, uh, that, uh, I am fearful that my spouse will commit suicide. That's not good enough. Justice Kavanaugh, what mrs. Cornelia said in this case was that she wanted the officers to check on mr. Cornelia and make sure that he was okay. They found him. Okay. He was calm, normal, and polite and speaking with them. Uh, and 12 hours had passed since the statement that he had made now, whether or not somebody in that situation might benefit from help that that's not an emergency officers in the moment, in the moment, don't have time to do all this. They're faced with a spouse. They're reacting to a situation. And you know what, if they say, you know what, that's not enough. And then the person commits suicide. You know, that's not a good result. And that's where your position, unfortunately, the starkest form of your position will lead to officers backing away from going into houses when older people have fallen, or there's concern about that, or when there's a risk of suicide. Justice Kavanaugh in a situation like this, the officers could have involved a mental health professional. And if they were unable to invite time is of the essence. In these cases, if it's a situation, Justice Kavanaugh, where the officers have an objective basis to think that time is of the essence, then they can go in under exigent circumstances. You don't know ahead of time. That's it. Then I'll let you go to Justice Barrett. Justice Barrett. Good morning, Mr. Redsky. I have a question. You know, you're talking about finding a neutral decision maker and you're, and you cite the line in your brief about police being engaged in the often competitive enterprise of ferreting out crime. What if, you know, and some communities are doing that because sometimes mental health checks don't go so well and people end up getting hurt or the police after someone who's mentally ill pulls a gun on the police or a knife, things go very poorly. And sometimes the person who is the subject of the welfare check winds up being hurt or killed. So some, some communities are creating a situation where social workers go in. Would that be reasonable? Do you need to have an administrative scheme or an administrative warrant or something like that? What if it's not the police who go in, but it's a community that has a system where you call a social worker, if there's going to be a welfare check and the social worker goes in, um, in the kind of situation that Justice Kavanaugh is describing. Justice Barrett, I think the social worker, if a government official would still be subject to the fourth amendment, but I know they'd be subject to the fourth amendment, but my question is, would that satisfy the fourth amendment? Um, I think the, it might because the social worker would be better equipped than a police officer to determine if there's a real emergency. And if the social worker shows up on the scene and decides in his or her professional judgment that I have to go in, uh, I think that would, that would go a long way towards showing that  No, no, no, no, no. I'm asking you is whether it affects the reasonableness calculus. If you have the kind of neutral person that you're positing would be appropriately involved in an administrative warrant scheme. If that kind of person shows up and says, yes, there's an old person who's been in there. And rather than having the police go in, the social worker is going to go in to check on the elderly parent in Florida who hasn't been heard from not exigent circumstances. So, so I think that likely would satisfy the fourth amendment, the framework that I would use to think about that is that the social worker is making a determination of exigent circumstances. Okay, but not exigent circumstances. So you're, so I think the answer to my question, you're, you're answering my question by saying no, the same standard would apply to social workers. And that's fine. That's consistent, but you're saying exigent circumstances are nothing, no matter which government official is making that judgment. Um, I, I, I think that's right. I think if the social worker were simply going in based on the judgment that there's no exigent circumstance, but this person could benefit from help. No, I don't think that's a determination that the government can make consistent with the fourth amendment. Okay. Then let me ask you about the kinds of administrative schemes that you're imagining. It sounds odd to my ears to talk about probable cause to think that someone would benefit from help, right? We use the probable cause requirement to talk about probable cause to believe that a crime has been committed. Are there circumstances where probable cause or reasonable position, reasonable suspicion, those sorts of standards have been used outside of the investigative context when we're talking about crime? Um, there are, and that is what this court called for in the camera case. And again, red flag clause and involuntary commitment laws, which I mentioned earlier are an example where the probable cause standard is applied. It's also been applied in other contexts like housing code violations, uh, and the like. So that, that, that's the problem. Housing code violations sound different to me. You know, you have probable cause to believe that there's been some sort of violation, even if it's not criminal. It sounds odd to me to apply that probable cause standard to the kinds of situations that the chief justice or justice Kavanaugh were positing where you have an elderly person who needs help. There's no violation. There's no violation, but I think the way that the court, that states have adapted the probable cause standard, and I think it's consistent with camera is the probable cause means an objective basis to believe, uh, that fill in the blank that some, somebody ought to have guns removed from them, that they pose a risk of harm to themselves and so forth. Okay. Thank you. A minute to wrap up council. Thank you, Mr. Chief justice. Um, the fourth amendment protects the home in a special way. Uh, when it comes to the home, a reasonable search requires a warrant unless there is consent or a true emergency. A number of the court's questions this morning and focused on the practical consequences of that. But, but as some of the questions suggested, the exigent circumstances doctrine and the and consent will cover the vast majority of situations that one might be concerned about where police can point to an objective basis to think that there is a need to go in. They can do so where somebody asks for help. They can do so. And in some of the other scenarios, states have come up with and can continue to come up with, uh, administrative warrant type regimes that meet the needs that the respondents and the United States are positing in this case. Uh, but the problem with the rule of the other side is positing, uh, is that it would allow people to go into, into the home police officers to go into the home without a warrant in situations that would essentially blow up numerous other fourth amendment doctrines that this court has held are very important to protect the sanctity of the home. Thank you, counsel. Mr. DeSisto. Thank you, Mr. Chief Justice, and may it please the court. The question presented is whether caretaking by police officers and first responders may under certain circumstances take place in the home without a warrant. It should. The petitioner has an absolute position. Under no circumstances should a warrantless caretaking occur inside the home except upon consent or exigent circumstances. This absolute, uh, all or nothing approach is contrary to the reasonableness standard of the fourth amendment, the very touchstone of the fourth amendment. There may be circumstances that allow the caretaking in a home absent a warrant when the advent of the potential harm is not so clear, but the need to respond could be immediate. Time could be of the essence. This court, uh, in the questions you've asked, uh, have outlined some examples of people who are elderly. I use the example of someone who hasn't gotten his or her mail for three days and lives alone. The potential harm is not so clear and the need to respond could be immediate. The same fact, the facts of this case also illustrate this point. The petitioner here demonstrated the potential for suicide or harm to his wife and others. The officers reasonably acted, weighing the intrusions against the risk and the timing of the harm. In this case, the absolute position taken by the petitioner not allowing the caretaking actions may have resulted in death or injury. That's why an absolute prohibition against warrantless entries law. Community caretaking in the home without a warrant should be allowed when it is objectively reasonable to do so. Thank you, Mr. Chief Justice. I welcome the court's question. Let's suppose, Mr. DeSisto, the police get a call from a neighbor and it says, you know, the Johnsons are away. I know they're not here. And they've got this fence around their backyard. It's locked. But there's a cat up in the tree. Can you come and help, you know, get the cat down? Is that community caretaking? Well, yes, I do. I think that is community caretaking. And here's why. You look at the intrusion, and the intrusion is simply climbing a fence and getting up in a tree. And you balance that against the privacy rights. And to me, climbing a tree and getting a cat doesn't adhere to privacy rights. So I think that would be a caretaking activity. Well, at common law and under our cases, the interests perfected by the Fourth Amendment, I think, are a little more significant than that. And, you know, the backyard surrounded by a locked fence is entitled to protection as well. You know, a mere cat caught in a tree, I mean, you leave it there for a while, it'll probably come down on its own. That's true. That is way in the balance of whether or not it's an intrusion. But, you know, the common law reflects criminal investigation, a criminal entry into a home for criminal purposes. So I'm not sure that that is an apt way to look at it. I think we've got to remember caretaking functions are for benign purposes, not for criminal investigations. Thank you, counsel. Justice Thomas. Thank you, Mr. Chief Justice. Counsel, when I look back at the cases that led to this, and that Katie relied on, they were all cases involving impounded or wrecked cars. How did we get from that to this case where no warrant is required to enter a private home as opposed to searching an impounded car? Well, you know, Katie does speak of vehicles. But the test of Katie is essential and applies to all people, especially to a reasonable, objective, reasonable test. Even Katie, Justice Thomas, indicates that there may be differences in the privacy rights when one looks at a—excuse me, there may be differences in the outcome when one looks at the privacy rights in a home versus a car. But the test— Well, you know, that's—I don't want to—I'm sorry for cutting you off. But just this point, here's my point, that in Katie, Chief Justice Rehnquist first posits that there is a warrant requirement, and we normally say that the Fourth Amendment standard when it comes to the home requirements of the Fourth Amendment are met with a warrant when it comes to the home. But he says this sentence, he writes this sentence, one class of cases which constitutes at least a partial exception to this general rule is automobile searches. That sounds to me as though that's an exception to the general requirement for a warrant. And I'm trying to figure out how you got from this case to the general case, to the case that he said, to the general rule. You got from the exception to the general rule, and I don't understand how we did that. Well, I would say that the—what I think is—to take that phrase, that sentence of Katie is talking about criminal investigations. So I use Katie to name the caretaking function, and then I go back to cases such as Georgia v. Randolph, where the court says, you know, you can't walk away from things that happen in a house that you have to react to it. So I think we go from the vehicle, but the test remains the same. The Fourth Amendment has only one test, and that is that searches and seizures shall not be unreasonable. Justice Breyer? My question—my problem is that if you take a caretaker exception and read that into the word reasonable, there's no stopping. We don't know how far we'll go. But if you are absolute, you may cause a different problem. So we're looking for subsidiary standards. CAMRA says you need a warrant for administrative searches, but it uses words like normally and so forth, so there's some wiggle room there. What about—what would you think of the standard that Rhode Island wrote into its law, that you'd write—we'd write a case that has to do with suicide threats, period. The American Psychological Association says you must take those threats seriously. So that's what we're writing about. The common law approach, this case. Rhode Island says any police officer—they wrote this statute after this case began—any police officer can take an individual into protective custody and so forth if the officer has reason to believe he is in need of immediate care and treatment and there'd be a risk of serious harm by reason of mental disability if he's allowed liberty. What about that? If the officer has reason to believe that there is an imminent likelihood of serious harm by reason of mental disability, and suppose we said, well, for this case, that is a reasonable standard. Isn't that the Fourth Amendment standard? I don't know. That's what I'm asking you. It is in general law is 1956 40.1-5-7.1. Yes. Okay. Now, what would you think of simply saying Rhode Island here has written a standard that is reasonable as applied to this case? And then you read. I read the sentence that I just read you. It doesn't say probable cause. It says if the officer has reason to believe, etc. Yes. What do you think of it? I would go back to the question presented because the question presented is whether the community caretaking exception to the Fourth Amendment extends to the whole. So for purposes of suicide in Rhode Island, that may suffice. But that doesn't answer the question that is before the court. Well, if the question before the court is caretaker, we'd say no, that exception is an automobile exception. That's what we said. But that doesn't mean there's no exception. There are emergencies, etc. And as applied to a person who's a suicide threat, Rhode Island's law does come up with a reasonable standard that we think does not violate the Fourth Amendment. What would you think of that? I would think that that helps for suicidal issues in Rhode Island. There's one standard for the country. And if that kind of thing is OK in Rhode Island, it's OK anywhere. I'm trying to get what you think of it. Yes. Yes. Agree. Justice Alito. Counsel, one of the things that is troubling to a lot of people about the caretaking exception is that it doesn't seem to have any clear boundaries. And when you tell us that it can include getting a cat down from a tree, that fortifies that concern. So can we narrow this down? Now, let's talk about the reasons why a search may be conducted or a seizure may be conducted. And again, putting aside the issue of a warrant, can we narrow it down to preventing life-threatening injury or serious injury or some definable quantity of property damage? Do you think it's possible to give it some structure in any of those ways? I do. I think the most important, obviously, the most important goal is preventing injury to life or death or destruction, major destruction of property. I don't think the test, though, is any different. Because I think when you weigh the interests involved against the privacy right, things like climbing up a tree to get a cat don't count for a lot. But I think if it's someone might die, that does count for a lot. And I do think that we have presented many standards for the community caretaking. Well, let me just interrupt because I have very little time. What about the amount of information that the government officer has to have? Probable cause, reasonable suspicion, something else? I think it has to be objectively reasonable and that's it. You know, probable cause has been an operant, is peculiarly related to a criminal activity. I just don't see where it fits. Well, it's a calculation of probability. But it's not an overwhelming requirement, but it's a pretty substantial requirement. Reasonable suspicion has a clear meaning. It could be applied in a lot of different contexts. Is that what you're advocating? No, I'm advocating to use the text of the Fourth Amendment, which is the touchstone. And that is reasonableness. So I think if we stick with is it objectively reasonable based upon all the guardrails that we've put in, that's the proper way to address this. Thank you. Justice Sotomayor? Counsel, I think that Justice Alito hit the nail on the head. As I've read the decisions of other circuits, they seem all to have different factors that make up community caretaking. And I'm actually not sure what it means. But I am concerned deeply about the First Circuit's claim that there is no requirement that officers must select the least intrusive means of fulfilling community caretaking responsibilities. I think what everyone has forgotten here is that at least in this situation, there was no immediate danger to the person threatening suicide and no immediate danger to the wife  And so the issue is, can the police, notwithstanding that, and notwithstanding the ability to ask the wife whether she would consent to giving up the gun and ammunition, that they decided on their own to go in and seize the gun? That appears to me to take away from any of the limiting principles that Justice Alito put forth. Yes, some, whether you call it reasonable suspicion, some suspicion, whatever adjective you put there, there was no immediate danger. There were a readily accessible alternative that was ignored. And you're putting into the hands of law enforcement the ability to use their judgment as opposed to that of the psychiatrists who were treating this man. They certainly could have asked the psychiatrists whether they should remove the guns or not. They didn't do anything. Tell me, what's the limiting principles? How serious does the threat have to be? How much judgment do the police officers have to be? How do we limit them from substituting their own? Could they have gone into the house and taken not just the gun, but any bat, knife, anything else that in their judgment this man could have used to commit suicide? I think that's where the objective reasonableness analysis comes into play. First of all, there was no immediate danger here. No, it doesn't, because the question is, the objective reasonableness has to do with going into the place and seizing. Yes, it was. So what was objectively reasonable under these circumstances? And what's the limiting principle? One of the things to keep in mind is that they were faced with a situation where he was taken to the hospital for evaluation. They didn't know when he would be back. Why couldn't they find out? Why couldn't they ask the wife? They could have. Why could they have just taken the ammunition and not the gun? They could have done all of those things. Justice Kagan, I would think that if the police have some good reason to think that a person is going to use a gun or other weapon to take his own life or to take his own life or to take the life of a spouse or other family member, that would count as reason enough for the police to proceed. In other words, it is an exigent circumstances, or you can say it falls within the exception that we've set up for emergency aid. So why didn't you make that argument? We looked at Brigham, and it was the timing of the potential harm, could happen in a minute, could happen in a day, and thought that that distinction made exigent circumstances inapplicable. Now, if this court— I'm sorry, could you just explain that to me a little bit? You just thought that it was not an immediate threat? And why did you think that? We thought that the timing of the potential harm couldn't be determined. It's undeterminable. And so exigent circumstances, when looking at this court's cases for emergency aid, and there are only two of them, Michigan and Brigham, where the action happened immediately, right in front of the officers, we thought that may not be the best fit. The best fit was the community caretaking doctrine, where the advent of the harm doesn't have to be immediate. In fact, it's unknown. I guess I understand why that would seem like community caretaking. That sounds like a phrase that covers a lot of stuff. But as Justice Thomas says, we've really only used that phrase with respect to automobile inventories—inventory searches. And you said, well, the Fourth Amendment has only one test. But I kind of think if there's any one principle of the Fourth Amendment law that this court has created, it's that the home is special and that the automobile is distinctly not. Yeah, I agree. But I think that that goes into the weighing of the balance. The test is the same. Whether it's an automobile, the privacy right is limited, and the home is at the forefront. That makes a difference if an entry into the home is challenged. I think courts take that into consideration. Thank you, Mr. DeSisto. Justice Gorsuch. Mr. DeSisto, common law, at least, you know, when we often look at common law, we're interpreting the Fourth Amendment as its reasonableness requirement. What did it mean then? People could, of course, trespass on property in aid of a public or private necessity, what we today call exigent circumstances. I'm unable to locate any common law authority privileging a trespass absent something like exigent circumstances. Have you been able to locate anything in the common law that comes close to what you're here? No, I don't think the common law helps either side of this. We needed to pressure the history of the making of the Fourth Amendment. I do think the restatement of torts, as you indicated, is our best example, and that is you're not a trespasser if you're going in for purposes of helping someone or helping the driver. If the original meaning and history doesn't help, let me ask you why I'm kind of following up on Justice Kagan real quickly here. I would have thought that cases of threatened violence against oneself or others or the prospect that someone is lying, having fallen in a home, would count as exigent circumstances in the vast majority of cases. And it's only when there's a long time delay that that's going to become a problem. So why doesn't the exigent circumstances bucket take care of the practical concerns that have been voiced here today? I think if this Court determines and clarifies that apart from Michigan and Fisher and Brigham, that exigent circumstances account for situations where the officer doesn't know when the harm is going to occur and doesn't know if there's an immediate need, but something must be done. They can't walk away. Well, then exigent circumstances does apply. Thank you, counsel. Justice Kavanaugh? Thank you, and good morning, Mr. DeSisto. Picking up right there on Justice Gorsuch's question does make this seem, as I think the amicus brief from the states, written by the Utah Solicitor General, says that this case is before the Court, as the brief says, quote, partly because of a confusion in nomenclature, end quote. And then that amicus brief also says, although mislabeled a community caretaking warrant exception, the First Circuit effectively applied Brigham City's emergency aid standard. And I'm wondering if we're just here because of a confusion about labeling, as that brief says. Can you respond to that? Yeah, I can. I think if this Court looks at Brigham and looks at Michigan versus Fisher and then determines that in situations apart from those where the officers, as I said, can't tell when the harm is going to happen and think that the need is imminent, if that's termed exigent, that's fine. I do think, though, that one has to look at the response under caretaking and exigent circumstances. One is reactive, exigent, and one is proactive. And look at the facts of this case. They sent him to be evaluated. They retained the guns. And frankly, the hospital record indicates that he was discharged because they were confident the guns had been taken. Those are proactive things that fall within the community caretaking doctrine that may not be applicable to exigent circumstances. Thank you. Justice Barrett? Good morning, Mr. DeSisto. You told Justice Gorsuch that your best example at common law of something like this was that for the tort of trespass, if you entered property because of necessity, there was no liability. And is it really the case that, say, I'm a neighbor and I go into Mr. Cornelia's home because I understand the wife is concerned about the presence of the guns still in the house, and I take the guns and then take them back to my house, that I'm not liable either for trespass or conversion? Well, I didn't say conversion, so that might be a little different. And don't forget, we're talking about a tort action. But I go by the words of the restatement. And under the restatement, if— But you're not asking just for the entry. You have to justify the seizure as well. And you don't have an example for that at common law, am I right? That's correct. Okay, let me ask you this. What if the police went into Mr. Cornelia's home and they found a meth lab? I assume that they can take all of that and then he can be prosecuted? He can. That's plain view. Yes. Okay. And then let's talk about how far this exception might go, because obviously there's a lot of concern about it being an umbrella for a lot of sorts of—lots of different things. Let's say that in a town with a high rate of COVID infection, police look through the window and they can see a lot of people gathered together that are not wearing masks. Can they enter? Yes. But see, I think that gets—there may be a criminal or, you know, a violation for so many people entering that would allow— No, that wasn't part of my hypothetical. No criminal, you know, it's just that there's no crime, you know, that—say that there's a mask ordinance that carries no penalty, people are told to wear masks, that there's no penalty for it. So there's just a concern about spread. Yeah, I look—yes, I look at the community caretaking test. There's a transient hazard. There's a non-investigatory reason for engaging in that activity going in. They have articulable facts. They've seen it. And there—it depends on what they do. If they go in and just disperse the crowd, I think that fits within the community caretaking. Okay. Thank you. My time's expired. A minute to wrap up. Mr. DeSisto? Thank you, Mr. Chief Justice. The text and the meaning and the spirit of the Fourth Amendment is not offended by caretaking activity to the most vulnerable at the most vulnerable times. So long as the intrusions are reasonable when weighed against the privacy interest, the question presented is something that should be answered in the affirmative. An absolute prohibition is not consistent with the Fourth Amendment. Our nation doesn't abandon those in need. Police officers cannot turn their backs and walk away. The circuit decision should be affirmed, and the question presented should be answered in the affirmative. Thank you. Thank you, counsel. Ms. Ratner? Mr. Chief Justice, and may it please the Court, this case is fundamentally different from most of the Court's Fourth Amendment cases, because the question is not act now or get a warrant first. It's act now or not at all. That's because there is no warrant process in a lot of these non-investigatory situations, from welfare checks on elderly residents to intervention in current suicide threats. Although there have been a lot of questions this morning about whether this is emergency aid or exigent circumstances or community caretaking or something else, the label you give it is not nearly as important as the principle. The key principle is, if someone is at risk of serious harm and it's reasonable for officials to intervene now, that is enough. The officials don't need to show that the harm is mere moments away or that there's no time to get a warrant, because again, for many of these situations, there's no warrant process that could be invoked at all. Ms. Ratner, how do you feel about the CAT? Do you let the policemen bring it down, or do you die in the tree? So we don't, Your Honor. The lower courts have generally applied three buckets of these types of community caretaking interests. One is serious harm to people, two is serious harm to property, and three is sort of an abatement of nuisances. We're here defending the serious harm to people, which we think is the paramount government interest. So no concern about property or animals? I think there would have to be unusually compelling circumstances for those other types of interests to be sufficiently important to match the important privacy interests. Okay, it's water dripping from above, you know, in someone's home and they happen to own a Van Gogh and the water is going to ruin the painting. Is that compelling? I think unlikely, I'd hope they could move the painting in those circumstances. No, they're like the elderly woman, they're off somewhere and nobody can reach them. Again, there may be circumstances where the court would want to consider those questions and it may want to leave that question open, but we think that most important cases for the court to cover here are the protection of risk to human health. There are cases where there's water dripping from above over an electrical box and firefighters are concerned about starting a fire in the home. Why aren't you arguing for an exception? It's not community caretaking. It's objectively reasonable grounds to believe life is in danger. That is more or less a test that we've put forward here. We think the community caretaking label is a little misleading because again, Katie was so bound up in the particular circumstances of vehicles and that the better rule here is that there be specific facts that objectively establish a non-investigatory justification, in particular, the need for assistance and that the scope of the official's actions be reasonably tailored to that interest. Thank you, counsel. Justice Thomas. Thank you, Mr. Chief Justice. Our counsel, as well-meaning as these checks may be, there's always going to be someone who does not want the government's help or doesn't want the intrusion. Normally, when we look at these things under the Fourth Amendment, we do look for some common law historical analog. Here, it seems as though there is none. Could you give us something to look to for the appropriate test? You've given us a number of tests. What you suggest should be the test, but normally, we look for some analog. What would be your best example? Sure, Justice Thomas. I think the best analog here is to the duties of a constable. A constable really wore two hats at common law. One was a peacekeeping role and one was a law enforcement role. When he acted in that peacekeeping role, if you look to Hale and Burns and Conductor Generalis, you saw that he could enter a home without a warrant to break up a fight, to stop late night noise, to deal with disorderly drinking, and that was different from when he was acting in his law enforcement capacity. So that, I do think, is the best analog that you have here. And I note that Petitioner hasn't identified a single case or treatise at common law in which a non-investigatory entry, a warrant was required. But it seems as though what you just gave me as analogs would fit under some of our current exceptions, exigent circumstances, emergencies, things of that sort. And I don't know why we would need another category to cover those examples. So Justice Thomas, if you think that exigent circumstances and emergency aid are broad enough to cover circumstances in which it is reasonable to act now, even if we don't know that someone is going to be injured in mere moments, then we are perfectly fine with that test, and we think that test would cover circumstances like welfare checks and the current suicide threat. The problem is when you have lower courts and Petitioner here saying that those are really cabined to circumstances in which the emergency is going to come to head in moments. And that's just too restrictive to map on to even that common law rule. Thank you. Justice Breyer? Hi. I'd like to know what you would think, if you accept, at least hypothetically, that if you just say community caretaking, we can't foresee how broad that might be. And if you use the present words that attach to emergency or exigent circumstances, they might, in this situation, be too narrow. But suppose we were, what would you think, what would the government think, of simply taking this case as a common law case, it does involve threats of suicide, they are serious, and saying the Rhode Island legislature has, this is a Rhode Island case, has enacted subsequently a statute that we believe has a constitutional standard that allows the custody, if the officer has reason to believe that there's a risk of imminent likelihood of serious harm by reason of mental disability. So, Justice Breyer, we would be fine with that result if the court clarifies what it means by imminence. But we can't, that's the very thing we can't do. I mean, I don't know how to do it. Because obviously a month is ridiculous. A second is too short. So you tell me, what is it that we should say? How do you define the word imminent? Often, Judge, I know less about this than psychologists and psychiatrists, who say that any utterance of the words threatening suicide should be taken very seriously. I'm not an expert, but I would think law should take it seriously. What do you want to say? I think if you said, by imminent, we have meant to suggest a current, ongoing crisis for which it is reasonable to act now, and you've bounded that description by reasonableness rather than by a mere moment's rule or by comparison to a warrant process that doesn't even exist, then I think that that would suffice and would give room to encompass these different very stiff situations. Justice Alito? How far can we go in giving a little bit more substance to what's been labeled community caretaking? Maybe what you've said so far does give it some substance. So I believe you said it at least encompasses a situation where the objective is to prevent life-threatening or serious physical injury. That would be a first step. I think that's correct. I would put emphasis on serious physical harm because the court said in Brigham City it wasn't going to require someone to be unconscious before. Okay, serious physical harm. And then how much information does an officer have to have? And does it matter whether it's a police officer or a mental health professional or someone else? The information we think is specific facts sufficient to objectively establish a non-investigatory justification and to make it reasonable to act now. And that would apply both to law enforcement officials and to others, which I do think is an important part of this case that the petitioner is asking for a warrant process to apply to things that firefighters do and social workers do and mental health professionals do. Well, in the case of the risk of suicide, do you think it's sufficient if someone says, my friend said she was so distraught she was going to jump out the window? And then they question that person and the person says, oh, it's just a joke. I think that would likely not be sufficient there. I think, again, you would need specific facts to objectively establish this risk. And here you don't have just a statement that might have been hyperbole. You have that statement coupled with the production of a live firearm, a statement that's so scared the individual who presumably knows that person best that she packed a bag, hid the magazine for the gun, left for the night, and called the police the next morning. And then you have confirmation by the person who made the statement that he did say it, that he was sick of the fight, and so on and so on. And so I do think courts are perfectly capable of drawing the line between those two scenarios. All right, thank you. Justice Sotomayor? Counsel, one of the reasons I think the Fourth Amendment was there was to make persons, and I'm quoting its own language roughly, to secure persons in their home. That's the language of the Fourth Amendment. And it seems to me that I don't have a problem with them having removed this gentleman and taken him to the hospital. That's a seizure. Because they had reason to believe that he was threatening suicide. And even though 12 hours had passed, the wife was still concerned. And he admitted to the threat, I'll bet calling it a joke. I don't think police officers have to take his description at face value, given the circumstances described. So seizing him and taking him to the home would seem to me into a psychiatric examination is very much an exigent circumstance. Missing here, as I've pointed out to your colleague, is the next step, which is going into the home without attempt to secure consent from the wife and seizing the gun and then keeping it indefinitely until a lawsuit is filed. The wife tried to get it back. He tried to get it back. Weeks and weeks went by. When we permit police to search and seize without some standard, we run the risk of situations like this one repeating themselves. So can you concentrate on the exigency with respect to the second seizure at issue? Because my colleague seemed concerned with the first one, preventing the suicide, which has to do with seizing the individual or even going in to care for the individual. I'm talking about a second seizure. And one that wasn't a seizure in plain view. They went in and literally searched and took it. So Justice Sotomayor, first to get out of the way that keeping indefinitely of the gun was found to be a due process violation. So you should take that part out of the case. And then the question was, should these officers have perhaps followed Petitioner to the hospital and made sure that he got a mental health evaluation or did they think taking guns where they knew the location of those guns was a better or an equal choice there? I think that's the closest part of the case. But at the end of the day, without the benefit of hindsight, it was a reasonable choice for them to think, let's temporarily take a hold of these instead of following this person to the hospital. And Justice Kagan? Ms. Ratner, can I ask you about a few of the community care cases in the lower courts and ask what you think of them? Roar it first. There's a lot of noise coming from one house. The officer knocks. Nobody comes to the door. The neighbors are complaining. But it doesn't rise to the level of a crime. Can the officer go in? As I mentioned before, we aren't defending the abatement of nuisances case like that one. I'm just asking. I mean, what do you think? I think the court should leave the question open. But what do you think? If we had to decide right now, I would say probably not. We think that the risk of harm to a person is really the core that could match. Okay. How about Quezada? The officer there goes to a home. I think that the officer is trying to leave a child protective order or something like that. But what the officer finds is that the lights are on inside and there's a TV on. Can the officer go in? I think probably not. I think in Quezada, there weren't sufficient specific facts to make it reasonable to believe someone needed assistance. Okay. How about McDonald? The house owner goes to a store, leaves his door partially ajar. The neighbor sees the open door, calls the police. Police officer arrives, doesn't receive a reply because there is, in fact, nobody there. Can he search the house? If it's just an open door, that's probably insufficient. Most of the open door cases involve other facts. Like there's a car in the driveway starting to become covered with leaves and mail outside and that sort of thing. Right. Does it give you pause at all that the community care exception has acquired these dimensions in the lower courts to encompass all of these cases? No, Justice Kagan. I think because you've really highlighted a couple of the more unusual ones. The vast majority, I'd point the court to the Lafayette Treatise if you look through these, are things like suicide threats and welfare checks and unattended children and weapons that are left accessible to children with no adults in the home and risks of explosion. They're just much more obvious circumstances where there's no warrant available. Of course, we want someone to intervene there. Thank you, Ms. Ratner. Justice Gorsuch? Good morning, Ms. Ratner. Let me see if I understand what you said this morning because it differs a little bit from my reading of your brief. You agree we should look to the common law to inform our understanding of the Fourth Amendment's reasonableness test? We've always agreed that the court looks to the common law for what it can get there. If there's a... Okay, and you agree that there we'll find a test that allows trespass for something that looks like exigent circumstances. And by that, I mean a grave injury to a person. So there are two differences there. You will see trespass for private individuals allowed both for serious harm to people and actually to property at the common law. And you will see government officials who are allowed to enter homes in the service of their peacekeeping duties. Okay, but you're asking us to rely on, as I understand it, maybe I'm mistaken, the common law's general rule that a trespass is permissible in aid of someone who's in danger of imminent physical injury. That's not quite how the trespass rule is framed at common law. Generally, as now explained in the restatement, it reasonably appears necessary to prevent a harm. So I wouldn't want to put that sort of immediacy cast. And again, that's the common law. I thought you said it had to do with physical harm to persons. So the common law actually extends both to serious harm to persons and to property. There are a lot of- Wait, but your argument, I'm asking about your argument now. It doesn't extend past persons. Is that right? Our argument we've defended today is that the serious government interest, the government interest that's been called paramount in individual safety is one that can match the significant privacy interest in the home. We don't think the court should get into a harms to property or abatement of nuisances. Okay. And if that's all true, why doesn't that more naturally fit under an exigent circumstances test rather than a community caretaking exception that started in Cady had to do with cars and now mostly has to do with nuisances? To be clear, we haven't located this in Cady itself. But the reason why exigent circumstances has, I think, tripped up some lower courts is because it's often thought of as the time available to get a warrant. So courts have said, okay, what if in this jurisdiction for a criminal case, someone could act to get a warrant within an hour? Well, they need to know that suicide is going to occur within an hour or that person they're doing a welfare check on is going to break their hips within the hour. And that's- Thank you. Thank you, Kelsey. Justice Kavanaugh. Thank you, Chief Justice. Good morning, Ms. Ratner. If I'm hearing you correctly, you're not concerned about the label, whether community caretaking or exigent circumstances as long as we get the substance correct. Is that accurate? That's accurate. And as I was just explaining to Justice Gorsuch, I think the key part of the substance in many circumstances is timing. If you limit this to mere moments or if you limit this to the time available to get a warrant when there is no warrant available, then that's, I think, when you end up excluding a lot of non-investigatory activity. And I think you used the phrase current ongoing crisis by which it's reasonable to act now. Is that inaccurate? Did I hear that correctly? Yes, I think that's correct. And then on the common law, I think there's an interesting question as the original meaning of the term reasonable, unreasonable is distinct from the term search and seizure. But put that aside, we certainly don't ignore the common law even as to the term reasonable. So if we're writing an opinion here and it goes along the lines of the rule that you're proposing, how would we write the following sentence or paragraph? Our proposed rule is consistent with the common law because, and you can fill in the blank with the rest of your time. Because the common law drew a line between government officials acting in an investigatory and a non-investigatory capacity. And when they were acting in a non-investigatory capacity, they were allowed to enter homes without warrants in order to address a need, a reasonable possibility of disturbance or serious physical harm. That also maps on to the common law of trespass, which applied, of course, beyond government officials and just to private individuals. I would note that because that's still the common law rule under petitioner's theory government officials would be allowed to enter the home in fewer circumstances than private individuals are permitted to enter. Thank you, Ms. Radner. Justice Barrett? Justice Barrett? Oh, sorry, I was on mute. Ms. Radner, can you say a little bit about how the common law rule that justifies a trespass in your view would justify seizing the guns? Sure. That is the circumstance where I think obviously there's no parallel between what government officials are permitted to do and what private individuals are permitted to do. And so to be clear about your argument, you're saying that you would be then okay if the rule that we articulated, if we sided with you, didn't include the ability to seize guns or other things found in the home? No, I would not be okay. My point is merely if you're talking about the common law trespass rule that applied to from that you can derive the general point, which is an entry is justified when there is a serious harm at risk. On the other hand, government officials obviously are allowed to do things all the time that private individuals can't do. And so I certainly wouldn't limit government officials to the common law rule that applied to private individuals only. So once you're in, then you don't need a common law analog. Once you're in, you seize the guns, if you see drugs and that sort of thing. Of course, plain view applies if someone is acting in a reasonable way within the meaning of the Fourth Amendment and the other things that law enforcement officers or other government officials are entitled to do. Even if the reason they've entered the house is to seize the guns? Yes. Part of the test that we're talking about here in terms of the scope is that we would expect what they do in the house to be reasonably tailored to the non-investigatory justification. So if it's reasonable to temporarily take a hold of some guns, then yes, as long as what they do inside the home is tailored to that, that's permissible. I would encourage the court not to focus too much on the guns of this case, in part because petitioner doesn't even make an argument about the case-specific reasonableness here. And in large part because a lot of the cases that are covered by these principles are going to involve firearms. Thank you, counsel. A minute to wrap up. Ms. Ratner? Thank you, Mr. Chief Justice. I just want to emphasize that the distinction between investigatory and non-investigatory activity is nothing new. Petitioner suggests that this would undermine or depart from a lot of Fourth Amendment case laws, but the court has drawn that distinction in assessing programmatic searches like mandatory drug testing and inventory searches. And in those cases, the analysis starts by asking whether there's an objective purpose grounded in general law enforcement. If there is, then a warrant's required. If there's not, then the court's applied general reasonableness review. It's also applied that review to public safety interventions in the homes, including protective sleeps and entries to stop domestic violence, to break up fights, or to provide first aid. So, applying a warrant requirement here would make little sense as a matter of text, history, or logic. And what matters, no matter the label, is that government officials can constitutionally answer to address a serious threat to lives or health. Thank you. Thank you, counsel. Mr. Goretsky, we've afforded your friends on the other side more time than anticipated, so why don't you take up to 10 additional minutes for further questions or points you might like to make. And during that time, my colleagues, of course, are free to ask additional questions. And I'd like to start by asking you whether you're concerned that this reliance on a lot of these situations was that, well, that's an exigent circumstance or that's an emergency aid. Why shouldn't we be concerned that doing that will dilute the limits on those exceptions, as opposed to having a more carefully defined exception for situations that aren't really that exigent or aren't really that much of an emergency? Well, Mr. Chief Justice, I think if you have a situation that isn't that exigent or that isn't an emergency, then police shouldn't be going in. The reason that the temporal limit on the exigent circumstances doctrine is so important is that it ensures that claiming exigent circumstances doesn't just become a pretext for law enforcement. And there were a couple of cases from the- Well, my concern is not so much it's a pretext for law enforcement, but that it's a pretext for community caretaking. Well, I think either way, the risk is that officers go in, they say it's because they're looking out for somebody's interest, but not in an emergency situation. And they end up at a minimum invading the privacy of the home when the person might just want to be left alone. Or worse yet, it might lead to a criminal prosecution pursuant to, say, the plain view doctrine. And there are a couple of cases from the lower courts that illustrate this perfectly. One is the Quezada case, which I think Justice Kagan brought up. And in that situation, police officers heard the television on. They saw that the door was slightly ajar. They went inside. They claimed that they were doing so because they thought the person inside might need help. They found the person sleeping on the sofa with a sawed-off shotgun next to them, and the person was criminally prosecuted. And the Eighth Circuit in that case held that was a permissible use of community caretaking. Now, whether you call it community caretaking or whether you call it a looser version of exigent circumstances, either way, not having the carefully defined temporal limit on what constitutes an exigent circumstance is critical for protecting the interests that underlie the Fourth Amendment. Mr. Dvoretsky, this is just Elena Kagan. If you think about what the SG said today as opposed to some of the statements in the SG brief, as I understood Ms. Ratner, she said, well, we don't care about the label and we can call it exigent circumstance. The only thing we care about, and she said, it has to be a current ongoing crisis. The only thing we care about is that no court should think it has to be really immediate or in the space of time with which to get a warrant because, after all, a lot of places, there's no place to get a warrant in circumstances like these. So what would be wrong with that? Justice Kagan, let me make two points in response to that. One, I think it's critical that the officers think that the need to act is imminent. And if you impose that imminence requirement that the injury is either happening now or that it's about to happen, I agree it doesn't need to be happening now and it doesn't need to be happening in a matter of seconds, but it has to be quite imminent. I think it's important to impose that temporal limit to avoid the sorts of problems that I was describing. The other point I'd like to make in response to that is states have come up with numerous warrant regimes that would apply in these types of situations. There was one in Rhode Island in this very case where police, if Mr. Cornelia had refused to speak to a mental health professional, rather than taking it upon themselves to send him to the hospital, police could have gotten an order from a court that in their judgment there was an emergency that required sending him to the hospital and a court could have authorized that. And so there are these warrant regimes. And in camera, in fact, there were not widespread administrative warrant regimes, but the court contemplated that such a regime was necessary in order to protect the Fourth Amendment. And states in the years since have come up with it. So I do think that states have created these kinds of procedures and that that is a significant part of the answer to the question here, is having those sorts of alternatives.  GOLDSMITH. Counsel, could you just back up a moment, because I think you blew past it pretty quickly. Explain what the problems are with diluting the eminence requirement. MR. CARROLL. So I think the problem with diluting the eminence requirement, and again, the cases, I think, illustrate this. If you don't ensure that circumstances are actually exigent, police will, in an infinite array of situations, be able to say, well, we had some reason to believe that the person inside might need help. And so if you take a case like Welch from this court's case law, where the police went to somebody's home, the person had committed drunk driving, but it was not a hot pursuit and the person was not a risk to the public because he was already at home, but the police nonetheless went into his house without a warrant and arrested him. This court said that that violated the Fourth Amendment. Under the other side's view of the law, presumably the police could say, well, we were very concerned that this person was inebriated and at home and needed help. If you allow that kind of a situation to constitute exigent circumstance, not only is that contrary to this court's cases like Welch, but to your point, Justice Gorsuch, I think it dilutes all of the interest that the Fourth Amendment is meant to protect. Counsel, on the question of suicide, how is an officer supposed to determine how immediate the person might commit suicide, that risk is? Assuming that the officer has gotten some articulable suspicion provided by someone else that a person's suicidal, how are they supposed to determine it's going to happen now, might happen tonight? How's the officer supposed to figure that out? I think it depends on what they see when they go to the home and to take this case. So they see nothing when they go to the home. They have, you know, this person is suicidal and some facts that support that and they can't get in the home. Just let them let it go. I think the first step would be to consult a mental health professional. If they can't consult a mental health professional. So that takes a few hours. And in the meantime, the suicides occurred. So first of all, I think in many states, it wouldn't take a few hours. It could be done much more quickly. But if they did find that they couldn't consult a mental health professional because they couldn't reach one for a few hours, and if they had a credible reason to believe based on whatever information or tips they were given, they couldn't wait. These formulas are great, but, you know, officers have to make a split second decision. Like they don't have time to figure this out by consulting mental health professionals. They've been told they've been told under the hypothetical that the person is suicidal. It's not the drunk driving example. It's not. It's suicidal. And you want them to hesitate. And I really question that. Justice Kavanaugh, if they have been told that the person is suicidal, they cannot get in touch with the person. They cannot get in touch with a mental health professional. I think in that situation, they could go in. I think that would probably constitute an exigency. You would impose the mental health professional requirement in there. The officer can't just take those facts and can't make a judgment trying to save a life. I think that if they can do that in a matter of moments on the cell phone while driving to the house to check on the person, they also call the mental health professional. I think they ought to do that. Counselor, this is Justice Sotomayor. That seems to me going too far. All right. Let's be realistic. This is like the Chief Justice's question about the lady who doesn't come out of her home. I do understand the difference between the wellness check and what the common law permitted you to do and the seizing of guns from the home where the person is no longer there or a suicide threat. There's a big difference between the two. Why can't you see the difference? Why can't your rule articulate that difference in a more reasonable way? Justice Sotomayor, I think on the facts of this case, the difference is that they were  He answered the door. He did not want to be helped, and they had no basis to think that there was an immediate harm that would have prevented them in that situation from contacting him. That's a different issue. I want to deal with the two seizures differently, and I want you to articulate a rule that deals with the two differently. Well, Justice Sotomayor, I do think, as your questions earlier suggested, that the seizure of the guns is wholly indefensible because they took an extra step of going into the home to seize the guns when there was no arguable imminent risk there while Mr. Coniglio was at the hospital. I still think that the seizure of Mr. Coniglio was also a Fourth Amendment violation, but I think one could distinguish between them along those lines. Mr. Dvoretsky, why don't you take a minute to wrap up? Thank you, Mr. Chief Justice. The one point that I wanted to add and rebuttal was on the common law. Under the common law, the only situations where officers could go in is where they either were in a hot pursuit situation or they were stopping ongoing violence. The restatement doesn't establish otherwise. The restatement provision says that officers can't commit a trespass or individuals can't commit a trespass if the person doesn't want the help. The reason that there isn't a common law example requiring a warrant in these sorts of situations is because these kinds of community caretaking functions are not ones that officers performed at all at common law. I think the bottom line of our position here is that we're not saying that police officers can never enter. We're just saying they need consent, a warrant, or an emergency, an exigent circumstances situation. But the exigent circumstances situation ought to be defined with a tight temporal limit in order to ensure the interest protected by the Fourth Amendment. The First Circuit, of course, relied only on the community caretaking exception as the sole basis for upholding the searches and seizures here. Because the community caretaking exception doesn't extend to the home, we ask that judgment be reversed. Thank you, counsel. The case is submitted.